For the reasons stated, the judgment of the trial court is

Affirmed.

---

STATE OF NORTH CAROLINA v. BORIS RAY DANCY

No. 97

(Filed 16 March 1979)

1. Criminal Law § 31— information about moon—no judicial notice of source offered

   The trial court did not err in failing to take judicial notice of the contents of the LADIES BIRTHDAY ALMANAC, BLACK DRAUGHT FOR ALL THE FAMILY, CARDUI FOR WOMEN, 1978, since that publication was not a document of such indisputable accuracy as justified judicial reliance.

2. Criminal Law § 31— information about moon—judicial notice taken by court on appeal

   In a prosecution for first degree burglary where the State relied upon eye witness identification of defendant by bright moonlight, the court on appeal takes judicial notice of the phase of the moon and the time of rising of the moon from the records of the U.S. Naval Observatory and awards defendant a new trial.

APPEAL by defendant from *Stevens, Judge.* Judgment entered 18 May 1978 in Superior Court, NASH County. Argued as No. 124 at the Fall Term 1978.

Defendant was charged in a bill of indictment, proper in form, with the felony of burglary in the first degree. The jury returned a verdict of guilty of burglary in the first degree, and defendant was sentenced to imprisonment for life.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Leigh Emerson Koman for the State.*

*Michael J. Anderson for defendant-appellant.*

---

BROCK, Justice.

Joseph Wilkinson (Wilkinson) and Major G. Thompson (Thompson) (age approximately 90 years) lived in adjoining duplex apartments in Rocky Mount, N. C. At about 9:45 p.m. on 30 January 1978, Thompson was lying in his bed in the middle room of his apartment. Thompson awakened and saw a boy in his apartment. The boy went to the front door, then turned and ran to the back door. Wilkinson, in his apartment next door, heard the disturbance in Thompson's apartment. Wilkinson ran to Thompson's back door and grabbed the boy as he emerged from Thompson's apartment. Wilkinson was unable to hold the boy but recognized him as the defendant by the light of the moon. Defendant was age sixteen at the time of the trial.

Wilkinson testified, *inter alia*: "I got a good look at Ray. The light was shining and the moon was shining bright that night. At that time it was wintertime and the tree in the backyard didn't have any leaves, and the light could shine right through." Then on cross-examination Wilkinson testified, *inter alia*: "The moon was shining that night. . . . It happened at 9:45. That's when I caught Ray. I couldn't hold him because I was barefooted. When he came out of that kitchen door he was facing me. The moon was shining bright."

One of the investigating officers testified that he arrived at Major Thompson's apartment at approximately 10:30 p.m. He further testified: "The weather was fair and clear and the moon was shining."

Thus it appears that the State's evidence of identification hinged largely upon the bright light of the moon at 9:45 p.m. on 30 January 1978.

Upon the opening of defendant's evidence the following transpired:

"MR. ANDERSON [counsel for defendant]: I would like to have the court take judicial notice of page 6 of the LADIES BIRTHDAY ALMANAC, BLACK DRAUGHT FOR ALL THE FAMILY, CARDUI FOR WOMEN, 1978. The relevance of this is that it shows that the moon on 30th of January, 1978, was not full, as testified, but in the last quarter, and that it did not in fact rise until 11:48 at night.

COURT: Does the State have any comment one way or the other?

MR. BONEY [district attorney]: The State will resist and object to that.

COURT: I am going to deny the motion to take judicial notice of that page of the almanac, in my discretion."

[1] We cannot say that the trial judge erred or abused his discretion in refusing to take judicial notice of the contents of the publication tendered. The LADIES BIRTHDAY ALMANAC, BLACK DRAUGHT FOR ALL THE FAMILY, CARDUI FOR WOMEN, 1978, is not a document of such indisputable accuracy as justified judicial reliance. The trial judge is not required to make an independent search for data of which he may take judicial notice; counsel should supply him with appropriate data. 1 Stansbury's North Carolina Evidence, § 11, p. 24 (Brandis Rev.). It is desirable and certainly contemplated by G.S. 1A-1, Rule 16(6), that counsel bring to the court's attention, in pre-trial conference, those matters of which it will be asked to take judicial notice. In the present case, it may well be, if defendant had advised the judge and the district attorney in pre-trial or other conference of what he would ask the court to take judicial notice, a more recognized and judicially reliable source could have been utilized.

[2] Nevertheless, in view of the reliance of the State upon eye witness identification of the defendant by bright moonlight at 9:45 p.m. on 30 January 1978, this court takes judicial notice of the phase of the moon and the time of rising of the moon from the records of the U.S. Naval Observatory as follows:

"At Rocky Mount, North Carolina, on 30 January 1978, moonset occurred at 10:40 a.m. Eastern Standard Time. Moonrise occurred at midnight, Eastern Standard Time, dividing 30 January and 31 January 1978. The Moon reached last quarter phase at 6:51 p.m. Eastern Standard Time on 31 January 1978."

Because of the reliance by the State upon identification by moonlight at 9:45 p.m., and because of the seriousness of the of-

fense charged and the penalty therefor, in our view the ends of justice require a new trial.

New trial.